416 P.2d 208

**Robert P. VIDAL, Petitioner,**

v.

**The INDUSTRIAL COMMISSION of Arizona and Pima County Highway Department, Respondents.**

**No. 1 CA–IC 44.**

Court of Appeals of Arizona.

July 1, 1966.

Hirsch, Van Slyke & Ollason, by Lawrence Ollason, Tucson, for petitioner.

Robert K. Park, Chief Counsel, by Glen D. Webster, Phoenix, for respondent Industrial Commission of Arizona.

DONOFRIO, Judge.

This is an appeal by writ of certiorari from the denial by the Industrial Commission of Claimant's petition to reopen his 1960 claim.

Claimant suffered a back injury on July 19, 1960, which was diagnosed as a lumbar strain. The Commission entered an Award and Findings in April, 1962, allowing claimant accident benefits and temporary compensation for periods of time through November 1961; but finding that he suffered no physical disability as a result of the accident. The claimant promptly filed a petition for rehearing alleging that he was entitled to compensation on light work status from November 1961 through March

1962, stating that he was under the care of his attending physician during that time, and was not released to regular work until March 1962. The Commission through its compensation supervisor replied to claimant's petition for rehearing by letter, noting that the petition had been received by the Commission. The letter stated that the medical consultation board had ordered claimant released to regular work in November 1961. It then read:

"Further consideration cannot be given to this protest until you have furnished medical evidence that you were disabled from work, and that all the medical reports in our file are not correct."

This is not a correct statement of the applicable law. It appears from the record that at this date the claimant was not represented by counsel. The Commission's Rule 5 suggests that claimants can present their claims "without the necessity of the expense of employing an attorney", and that the Commission will assist them by supplying them with "certain forms". The Commission has a notation, "no other forms are either necessary or advisable. * * *"

We held in Salmi v. Industrial Commission, 3 Ariz.App. 411, 415 P.2d 126 (1966) that the formal hearing is a matter of right, and the party requesting it need not state reasons for the request although the forms furnished by the Industrial Commission appear to require a statement of the reasons. The printing on the form furnished to this claimant recites that he petitions the Commission for a rehearing on the grounds that the decision is unjust and unlawful, that the evidence does not support the findings, and the findings do not support the decision and ends with these words: "for the following reasons, to-wit:". There follows a blank space to be filled in. This form, instead of assisting the claimant in the presentation of his claim without the expense of an attorney, ostensibly places a higher duty on the defendant than the rules of the Commission or the courts require. Both the printed form and the letter from the supervisor, indicated to the claimant that he must do more than the law requires him to do, in order to gain a formal hearing of his claim. When the Commission's Decision Affirming Previous Findings and Award issued in May 1962, claimant was evidently discouraged and did not protest it. This decision contains the following findings:

"1. That medical evidence fails to substantiate said applicant's allegation of working disability subsequent to November 20, 1961.

2. That no useful purpose could be served by holding a rehearing in the matter."

The "rehearing" referred to is not a rehearing, but a first formal hearing, with an opportunity to present evidence and cross examine witnesses, rights which the claimant had never been afforded an opportunity to exercise.

We can only conclude that as a result of these devised methods employed by the Commission, the claimant allowed his claim to be closed without further protest, which resulted in a determination of no physical disability. The next action claimant took was in October 1962, when he filed his petition for reopening. That petition indicated that a Dr. Russo would furnish medical evidence of a disability resulting from the 1960 accident. No medical reports appear in the file to support this petition, and in January 1963 the petition was denied.

The award denying the rehearing was protested, and a new petition for rehearing was filed January 25, 1963. This petition alleged new and additional disability, and stated that Dr. Chesser would submit new medical evidence. Nothing was submitted by Dr. Chesser, but a Report of X-Ray Examination was submitted by Dr. Arthur J. Present. This report compares the X-Rays of 1960 with the X-Rays of 1963, and states that, "the disc is much narrower, perhaps $\frac{1}{3}$ its width, as compared to films made at St. Mary's on May 5, 1960." Dr. Present's report states his conclusion, that "Narrowing of the lubosacral disc space is evident and it has been progressive, having become

much more marked since 5-5-60." He makes no attempt to causally relate this to the accident. Dr. Present lists W. S. Kitt, M.D., as the attending surgeon. March 11, 1963, a claims supervisor advised the claimant by letter that the Tucson office had contacted Dr. Chesser, who indicated to them he would not be sending a report. The letter admonishes the claimant that, "unless you have further evidence to submit it would appear there would be no purpose served by having a legal hearing and the Commission, therefore, would deny your petition." The letter gives claimant ten days to file additional reports. On April 10, 1963 the Commission issued an Award denying "rehearing" (again, no formal hearing had ever been held in this claim), finding, "That no medical evidence has been submitted to substantiate said applicant's petition for rehearing." The record indicates that the claimant was still attempting to prosecute his case in propria persona. Dr. Present's X-Ray Report, which was medical evidence, was stamped "received" by the Commission on February 8, 1963, prior to the date of the Award and subsequent to the filing of the petition. The Commission's Rule 64, regarding reopening of claims, is as follows:

"64. Application for Reopening or readjustment of claims:—Application for an increase or rearrangement of compensation or application for compensation based upon new additional or previously undiscovered disability, or application or petition to reopen claim, shall be filed with the Commission in writing, setting forth facts and circumstances, and supported by a written report of a physician or surgeon, duly and regularly licensed to practice medicine and surgery in the State of Arizona, setting forth facts and circumstances in detail relating to the then physical condition of said applicant."

Again, although the Commission's Rule 5 assures claimant he can prosecute his own claim before the Commission without the need of having an attorney, the wording of Rule #64, the letter of explanation from the compensation supervisor, and the Award denying a "rehearing," are so vague, if not actually misleading, that they fail to give claimant sufficient information to determine why his petition for reopening is being denied. The claimant submitted medical evidence, in the nature of Dr. Present's report. True, to a trained legal mind it was not sufficient medical evidence to prove the necessary causal relationship between claimant's then present disability and his accidental injury of 1960. However, the Commission was aware that claimant had no counsel. They suggest by their rules that counsel is not necessary; yet with this suggestion on their part, and the knowledge that claimant relied upon it, they failed to inform the claimant of what the fatal defect in his petition and supporting medical evidence was. Nowhere do the applicable rules or the supposedly helpful letters, or the Award itself say specifically what must be the nature of this medical evidence that is required to reopen a claim. Thus, although the claimant incurred the expense of the X-Ray examination and report of Dr. Present, and although it was promptly filed with the Commission, his petition for reopening was summarily denied with the sole finding, "no medical evidence has been submitted," a finding patently incorrect on its face.

The Award was mailed to the claimant on April 10, 1963, and on May 2, 1963 he wrote a letter to the Commission protesting the Award and naming Doctor Fontenova as his attending physician. The compensation supervisor wrote claimant another letter stating that she enclosed petition for reopening forms; and calling attention to Rule 64 and the Commission's letter of March 11, 1963, "in which you were advised that before consideration can be given to reopening your claim, it will be necessary that you submit medical evidence from your physician *reporting your need for further treatment.*" (Emphasis supplied.)

The claimant completed the forms, but gave no reasons for requesting a reopening, on May 11, 1963. These were evidently accompanied by the letter from Dr. Fontenova, that appears with the forms in the file, which states exactly those facts the supervisor's second letter told the claimant were necessary to effect a reopening, namely, that claimant was under his care in April 1963, that the treatments were helping him, and that the treatments should be continued. This time, May 21, 1963, the Commission used its printed form denying reopening, finding that "claimant does not have any new, additional or previously undiscovered disability attributable to injury by accident" arising out of his employment.

At this point claimant secured the services of an attorney, who filed a Protest of the Award on June 11, 1963. A Petition for Rehearing was filed June 13, 1963. The claims supervisor wrote a third letter to the claimant, this time stating:

> "*Unless Dr. Chesser furnishes medical evidence,* at your expense, that the present condition is related to the injury and sufficient to reopen your case, the Commission will have no alternative but to deny your petition for reopening." (Emphasis supplied.)

An answering letter from claimant's counsel demanded that a hearing be set at which time claimant would present medical evidence. The Claims Department answered, stating that in fact medical evidence need not be submitted in support of a petition for rehearing, but strongly suggesting that counsel submit some anyway. Counsel wrote a letter requesting that Dr. Fontenova be authorized to treat the claimant. The Commission on August 26, 1963, issued its Order Denying Rehearing, (still not one formal hearing had been held in this entire case, over a three year period). This Award found that claimant had failed to submit any evidence not previously considered by the Commission, and that no useful purpose could be served by holding a "rehearing" in the matter.

Again the Award was protested, and another Petition for Rehearing was filed dated September 5, 1963. A memo appears in the file dated September 13, 1963, informing the chief investigator that Dr. Paul H. DeVries had examined claimant and would furnish medical evidence for claimant's Petition for Rehearing. The compensation supervisor wrote a letter to Dr. DeVries dated November 8, 1963, the sole purpose of which appears to be to inform Dr. DeVries, that he must look to the claimant for his fees. On December 2, 1963, a memorandum appears in the file directed to the compensation supervisor recommending the claimant's petition should be denied "as nothing has been forthcoming from any doctor or the claimant since 11–8–63 letter." Again claimant's Petition for Rehearing was denied, on December 9, 1963, giving the same findings as those given on August 23, 1963. This was protested, and another Petition for Rehearing was filed on January 17, 1964. After four years of futile petitioning, a date for a hearing was set for March 16, 1964.

On February 7, 1964, the Commission received a letter report from Dr. Hess of Tucson, reporting his findings and conclusions upon examination of the claimant. He sets forth in detail his objective findings of degenerative changes. He stated that he could only provide his short-term report, as he had not seen the claimant prior to 1964, however, he recommended that a medical board review the case to determine whether it should be reopened.

The claimant was the only witness at the hearing on March 16, 1964. He stated that he had suffered pain in his back continuously since his accidental injury in 1960. He testified that the pain gets progressively worse as he attempts to work. He worked one seven hour day, but was unable to return to work the following day because of the pain and swelling in his back, and the necessity of treating it by soaking in hot baths at intervals. He was working as a janitor at light clean-up work and as a part-time caddy at a Country Club

three or four days a week. He stated that it was necessary that his hours be flexible so that he could take time off when his back pained him.

Following the formal hearing, the Commission authorized a medical board examination of the claimant which was held on May 14, 1964. None of the doctors that made up the four man board had treated the claimant. The fourth doctor was the Commission's medical advisor. Claimant's attending physician, Dr. Hess, who had submitted the written report in February of that year was not included in the consultation. The "History" given by the medical board contains a curious reference to the legal procedures claimant pursued before the Industrial Commission:

> "* * * he has filed a petition for reopening of his case on numerous occasions but at no time has medical evidence indicated a medical need for reopening of his case."

The Consultation Report concludes that the history and a review of the file indicates that claimant's subjective complaints originated in the accident of 1960, but their continuation would be more logically ascribed to the degenerative changes shown by the X-Rays. The degenerative changes were not caused by the accident; however, the report continues and states that a spine with these degenerative changes might be more subject to strain than a spine without them. The report states that claimant, "is not disabled for work which would be commensurate with his size, build and general physical condition * * *", and "on the basis of his performance * * * it would appear that there are no limitations as to sitting, standing or lifting for a normal work week."

One doctor from the consultation board testified at a formal hearing which was held on January 13, 1965. He testified on examination by claimant's attorney that he had no reason to disbelieve claimant's protestations of pain, but that he could not say whether the pain was caused by the accident.

On cross examination he testified that the degenerative changes also could account for the pain. He did not express an opinion as to what probably caused claimant's subjective complaints.

The Commission issued its Decision Upon Rehearing on March 3, 1965, reaffirming its Decision of May 21, 1963, which found that claimant failed to show any new, additional or previously undiscovered disability.

The claimant petitioned for a further hearing on April 5, 1965, alleging that he had additional evidence to submit concerning a change affecting the claimant's earning capacity as a result of existing disability, all related to the original injury. By letter dated April 12, 1965, counsel submitted the names of two lay witnesses he wished to call, and stated that there were several others to be submitted prior to a hearing. He also stated that there would be further medical evidence, and he would advise the Commission to whom they should submit the file.

The Commission denied claimant's petition April 28, 1965, finding that until claimant shows he has suffered permanent partial disability the question of reduction in earnings does not arise.

 It is the opinion of this court that the original Award of May 1962, did not become a final Award, and is not res judicata. The Commission undertook a duty to advise the claimant of the procedure necessary to protest that Award, and having undertaken it, was then obligated to advise him correctly. As we have pointed out, the information supplied to the claimant was not correct. It indicated that in order to be afforded a hearing on his claim, with the right to produce and cross examine witnesses, he had to do more than the statutes and the courts require. The formal hearing is a matter of right. Claimant is entitled to a hearing based on his original protest.

The Award of May 1962, is set aside.

STEVENS, C. J., and CAMERON, J., concur.