504 P.2d 72

Allen B. MENGEL, Petitioner,

v.

The INDUSTRIAL COMMISSION of Arizona, Respondent,

Safeway Stores, Inc., Respondent Employer,

Travelers Insurance Company, Respondent Carrier.

No. 1 CA–IC 720.

Court of Appeals of Arizona, Division 1, Department A.

Dec. 14, 1972.

Rehearing Denied Jan. 18, 1973.
Review Denied March 6, 1973.

Vanlandingham & Little by John Vanlandingham, Phoenix, for petitioner.

William C. Wahl, Jr., Chief Counsel, The Industrial Commission of Ariz., Phoenix, for respondent.

Burch, Cracchiolo, Levie, Guyer & Weyl by Joseph L. Moore, Phoenix, for respondents employer and carrier.

CASE, Judge.

This matter is before us by writ of certiorari to review the lawfulness of a decision upon hearing and findings and award denying petitioner compensation from and after 4 December 1970.

In March 1970 the petitioner suffered an injury arising out of and in the course of his employment. The injury occurred when a truck, driven by the petitioner, jackknifed. As a result of the accident, petitioner's left ear was partially torn off and he sustained a fracture of the cervical spine. The ear amputation resulted in permanent disfigurement and because of continued back problems petitioner has not returned to work as a truck driver.

Prior to the accident, petitioner had developed a condition described by the examining physicians as "ankylosing spondylitis". This condition had caused a general stiffening of the spine throughout the area of the neck, back and rib cage, which resulted in a limited ability to move and turn his neck and rotate his spine. It was also clearly established that the condition existed prior to and at the time of the accident and that the condition was aggravated as a result of the accident.

Temporary compensation was paid by respondent insurance carrier until terminated on 4 December 1970. Petitioner filed a request for hearing and pursuant thereto a hearing was held in May 1971. The findings and award of the hearing officer were affirmed by the Industrial Commission, and this appeal followed.

The sole question before this Court is whether the findings and award of the Industrial Commission affirming the decision upon hearing and findings and award denying petitioner permanent disability compensation are supported by the evidence.

▪ The Arizona Supreme Court has held that an appellate court will affirm awards of the Industrial Commission when there is any substantial evidence to support the Commission's decision. Caganich v. Industrial Commission, 108 Ariz. 580, 503 P.2d 801 (filed 28 November 1972).

The specific determinative findings objected to by petitioner and which he contends are unsupported by the evidence are set forth as follows:

"6. The medical reports find that the industrial accident aggravated an underlying ankylosing spondylitis which preexisted the accident causing an extended period of disability; that the applicant's condition, as related to the accident, became stationary on December 4, 1970; and that on said date the applicant's industrial injury was completely healed; and that any present disability is the result of the underlying ankylosing spondylitis and is not related to the industrial injury of March 1, 1970."

\* \* \* \* \* \*

"9. The medical evidence that the applicant has no industrially related permanent disability is uncontradicted since 'Equivocal testimony cannot create a conflict in medical testimony. [cites omitted]'. Belshe v. Industrial Commission, 98 Ariz. 297, 404 P.2d 91 (1965)."

\* \* \* \* \* \*

"10. The applicant has no permanent physical or mental disability attributable to the industrial injury of March 1, 1970."

The petitioner argues strenuously that the finding of no permanent disability resulting from the accident is wholly unsup-

ported by and in fact is contrary to the evidence presented. He relies on the testimony of his family doctor and the reports of the examining specialists. As to the relation of the industrial injury and preexisting condition, Dr. Rogers, petitioner's family doctor, testified as follows:

"Q. Now, Doctor, is it correct that when you have a spinal condition like this, that it's ankylosed, stiffened up as Mr. Mengel's, that normally speaking, the more ankylosed it gets, the stiffer, the less pain there is, and the less pain you get from normal activities from that back?

A. It's a possibility. Maybe that's one reason why they get ankylosis, because they don't move as much.

Q. Well, as a matter of fact, isn't that what the medical people want to accomplish in a fusion? They want to stiffen that back so it doesn't move and you don't have the pain. Isn't that right?

A. Well, yeah.

Q. And that's what happens in ankylosis?

A. It could be one of the things that happens.

Q. But isn't it true, also, that any *trauma* of any sort to that kind of a spine then causes a disturbance among this ankylosis, this calcium or whatever is in there, and causes more pain?

A. It's a possibility.

Q. Is it a probability, Doctor?

A. It's a probability." (Emphasis ours)

Dr. Fife and Dr. Palmer, orthopedic specialists, did not testify but their written report was entered in the record by stipulation of the parties. The report stated:

"COMMENT: The patient's continued subjective complaints of pains in the arms and diffuse tenderness in the cervical spine and dorsal spine would be attributable to the underlying ankylosing spondylitis which preexisted this accident. This ankylosing spondylitis undoubtedly has been a gradually progressive chronic ailment and it is our opinion *that the accident aggravated this underlying condition,* creating cause for disability for an extended period of time after the accident.

It is further our opinion that the patient's condition as the result of this accident is stationary, that the injury to the cervical spine has completely healed and that no further treatment or observation will be necessary with regard to this injury.

The patient has a defect in the left ear as the result of this accident which will be permanent and will be disfiguring.

The patient's gradually progressing ankylosing spondylitis, causing limited motion of the neck and back, *would create a situation where it would be unwise for the patient to drive a heavy truck or equipment because of the limited motion of the neck.* This inability to drive is not related to the injury of 3–1–70.

The patient undoubtedly will need contined medical management by his attending physician, Dr. William Rogers, with regard to ankylosing spondylitis and may require symptomatic medication for this condition. However, it would be our opinion that further medical treatment in this regard would be due to the pre-existing condition and not due to the injury in question." (Emphasis ours)

Arizona's law of workmen's compensation is clear that where an industrial injury, operating on a preexisting disease or infirmity, aggravates that infirmity to the extent that a workman is disabled thereby, a compensable claim exists. Tatman v. Provincial Homes, 94 Ariz. 165, 382 P.2d 573 (1963); Mead v. American Smelting & Refining Co., 90 Ariz. 32, 363 P.2d 930 (1961); Montgomery Ward Co., Inc. v. Industrial Commission, 14 Ariz.App. 21, 480 P.2d 358 (1971). As we stated in Montgomery Ward, supra:

"The principle is well established that a preexisting disease or infirmity of an employee does not disqualify that employee from compensation where an industrial injury, operating on that preex-

isting disease or infirmity, produces further disability. Gullick v. Industrial Commission, 94 Ariz. 237, 383 P.2d 123 (1963); Murray v. Industrial Commission, 87 Ariz. 190, 349 P.2d 627 (1960); Jones v. Industrial Commission, 70 Ariz. 145, 217 P.2d 589 (1950); Horn v. Industrial Commission, 68 Ariz. 323, 205 P.2d 1198 (1949); 1 A. Larson, The Law of Workmen's Compensation § 12.20, at 192.23 (1968)." 480 P.2d at 359-360.

As previously stated, it is uncontroverted that the industrial injury aggravated the petitioner's preexisting spondylitis condition. The question then arises as to whether petitioner's inability to work is due solely to the natural progression of his preexisting disease, as found by the hearing officer, or to the disease as aggravated by the industrial injury.

The report of Dr. Fife and Dr. Palmer states unequivocally that the inability to drive "is not related" to the industrial injury. The report further indicates that petitioner's condition relating to the accident has become stationary.

It is the law in Arizona that a petitioner has the burden of showing that a claimed additional disability was in fact caused or contributed to by the work related injury and not merely a result of the natural progression of the preexisting disease. Wheeler v. Industrial Commission, 94 Ariz. 199, 382 P.2d 675 (1963); Collins v. Industrial Commission, 3 Ariz.App. 107, 412 P.2d 282 (1966).

It is clear from the medical record that the petitioner has met his burden in showing that the industrial injury has aggravated a preexisting condition and there is nothing in the record to indicate the condition would have been where it was if not for the aggravation. The petitioner need not show continuing aggravation. The facts convincingly show that petitioner was able to work prior to the accident even though he was suffering from a preexisting disease and that he is now unable to work.

The fact that the industrial injury was stationary meant only that the fracture to the cervical spine had healed and was no longer a specific contributing medical factor in the disability. That does not mean, however, that the continued disability was not legally related to or caused by the industrial injury. There is a difference between the concept of medical and legal causation. The Supreme Court stated in Murray v. Industrial Commission, 87 Ariz. 190, 349 P.2d 627, 633 (1960):

"The difference in the medical and legal concept of cause results from the obvious differences in the basic problems and exigencies of the two professions in relation to causation. By reason of his training, the doctor is thinking in terms of a single, precise cause for a particular condition. The law, however, endeavors to reach an inference of reasonable medical certainty, from a given event or sequence of events, and recognizes more than one cause for a particular injurious result. In the law of torts, it is said that the tortfeasor is not entitled to a perfect specimen upon which to inflict injury. Likewise, in the field of Workmen's Compensation, the employer takes his employee as he is. *In legal contemplation, if an injury, operating on an existing bodily condition or predisposition, produces a further injurious result, that result is caused by the injury.*" (Emphasis ours)

The industrial injury to the petitioner need not be the sole cause of his disability so long as it is a contributing cause. Romero v. Industrial Commission, 11 Ariz.App. 5, 461 P.2d 181 (1969); Tatman, supra.

It is our opinion that the Commission's finding, that petitioner's present disability is not related to the industrial accident, is an erroneous conclusion not supported by the evidence.

The award is set aside.

STEVENS, P. J., and DONOFRIO, J., concur.