545 P.2d 446
Mariano G. ARELLANO, Petitioner,

v.

The INDUSTRIAL COMMISSION of
Arizona, Respondent,

Kitchell Contractors, Inc., Respondent Employer,

Industrial Indemnity Company, Respondent Carrier.

No. 1 CA–IC 1257.

Court of Appeals of Arizona,
Division 1,
Department C.

Jan. 20, 1976.

Moore & Tyson, by Lynn S. Moore, Tucson, for petitioner.

Greg L. Folger, Chief Counsel, The Industrial Commission of Arizona, Phoenix, for respondent.

O'Connor, Cavanagh, Anderson, Westover, Killingsworth & Beshears, P. C., by Lawrence H. Lieberman, Phoenix, for respondents employer and carrier.

## OPINION

WREN, Judge.

This is an appeal by certiorari from an award of the Industrial Commission which, while finding that petitioner was entitled to temporary compensation, determined that his condition had become stationary on June 19, 1974, and that he had suffered no permanent disability. We agree with the Commission and affirm the award.

The facts are that petitioner sustained an industrial injury to his back on August 16, 1973, while operating a jackhammer for respondent employer, Kitchell Contractors, Inc. The attending physician, Dr. Eric Gormally, found that the injury had aggravated a preexisting, but previously asymptomatic, degenerative arthritis of the spine. A claim for benefits was filed on December 24, 1973. It was denied by Notice of Claim Status dated January 18, 1974, by respondent carrier, Industrial Indemnity Company. Petitioner filed a Request for Hearing before the Industrial Commission on February 15, 1974, and the matter was thereafter heard on August 7, 1974, culminating in entry of the award on August 27, 1974.

On two separate grounds petitioner challenges the finding of the hearing officer that he had suffered no residual disability: (1) that the carrier's Notice of Claim Status had denied the claim as noncompensable, and therefore the hearing should have been limited to the singular issue of compensability, since the hearing officer had no jurisdiction to go beyond that issue to the question of disability; (2) that the award was not supported by the evidence.

## LIMITATION OF ISSUES

For two separate reasons petitioner's argument is unavailing upon the facts here. First, under Rule 35(b) of the Rules of Procedure for the Industrial Commission, "All Requests for Hearing shall set forth specifically the basis upon which the hearing is requested." We note that petitioner's Request for Hearing before the Commission alleged not only that he had sustained a compensable injury, but went on to assert a continuing disability, and even the nature of that disability; i. e. that he was unable to continue his work as a jackhammer operator. We construe such allegations as specifically raising the question of permanent disability, and making it an "open issue" for the hearing officer.

Also forecasting that the issue would be laid before the hearing officer was the report of Lawrence M. Haas, M.D., filed by the carrier on July 15, 1974, wherein the doctor concluded:

"I feel that as far as the industrial injury was concerned, no further problem exists, and that his present complaints are secondary to his pre-existing degenerative arthritis."

This report was followed by a subpoena for Dr. Haas. The subpoena was requested by the carrier over twenty days prior to the hearing, and a copy thereof forwarded to petitioner's attorney, all in full compliance with the rules.

Clearly petitioner had advance warning that one facet of the hearing would be possible permanence of the claimed disability. He cannot now be heard to complain that he was not prepared to meet that issue, particularly when he made no request for a continuance either prior to or during the hearing.

Secondly, the record of the proceeding is replete with inquiry by both counsel on the question of the continuing effect of the claimed disability. The same record is devoid of any objection to such line of inquiry by petitioner. His failure to object constituted a waiver of the hearing officer's consideration of the question. See *Ujevich v. Industrial Commission*, 44 Ariz. 16, 33 P.2d 599 (1934).

We hold therefore that the issues before the Commission were not limited in scope

by the parameters of the specific findings reflected in the challenged Notice of Claim Status. The duration of petitioner's disability was not foreclosed by the fact that that question had not been reached because of the determination in the Notice that there had been no compensable injury. The hearing provided a forum for both parties to present evidence on the issue of the duration of petitioner's disability, if any, and to cross-examine witnesses on all matters relevant thereto. *Cf. Vidal v. Industrial Commission,* 3 Ariz.App. 529, 416 P.2d 208 (1966); *Salmi v. Industrial Commission,* 3 Ariz.App. 411, 415 P.2d 126 (1966); See also *Russell v. Industrial Commission,* 104 Ariz. 548, 456 P.2d 918 (1969); *German v. Industrial Commission,* 12 Ariz.App. 301, 469 P.2d 867 (1970).

## PERMANENT DISABILITY

Petitioner next contends that the hearing officer's finding that, as of June 19, 1974, he no longer suffered from the effects of the injury was not supported by the evidence. Petitioner points to a 28 year work history as a laborer with no back difficulties until the jackhammer incident, and the fact that he was thereafter unable to work because of the pain which continued to plague him. He asserts further that the evidence in support of his claim of permanent disabling pain and inability to work was uncontroverted.

We agree that the record contains no evidence controverting petitioner's complaints of pain and the fact that he was unable to work following the injury. However, it is in the area of causal relationship of that pain to the industrial episode that petitioner's argument must fall, as that issue was not without medical conflict.

Dr. Haas examined petitioner on June 18, 1974 and gave the following diagnosis:

"My opinion is that—and I will give it in its entirety—is that this man has a severe, moderate to severe degree of degenerative arthritis of his back that is actually more advanced in a person of his age than would normally find; and

according to all physical findings, this amount of arthritis is severe enough to cause symptoms, severe enough to prevent him from doing continuous heavy labor. However, because of the lack of objective findings and because of the lack of changes on the x-rays, an amount of pre-existing general degenerative arthritis, which was present before his industrial injury, *that the industrial injury itself has completely resolved and that all of the symptoms are due to the degenerative arthritis.* It is also my feeling that the injury did aggravate his degenerative pre-existing injury and that therefore he was disabled because of his industrial injury, but that his current condition is secondary to degenerative pre-existing disease.

"Q. *I take it, then, in terms of aggravation, doctor, you just said that the aggravation was a temporary one and not a permanent worsening of the underlying disease?*

"A. *That is correct.*"

(Emphasis added.)

Recognizing the dilemma into which he has been cast by such a clear cut medical opinion on the lack of causal relationship between injury and disability, petitioner directs us to the following principle of *Mengel v. Industrial Commission,* 18 Ariz.App. 541, 504 P.2d 72 (1972):

"It is clear from the medical record that the petitioner has met his burden in showing that the industrial injury has aggravated a preexisting condition and there is nothing in the record to indicate the condition would have been where it was if not for the aggravation. *The petitioner need now show continuing aggravation. The facts convincingly show that petitioner was able to work prior to the accident even though he was suffering from a preexisting disease and that he is now unable to work.*"

(Emphasis added by petitioner.) 18 Ariz. App. at 544, 504 P.2d at 75.

*Mengel*, petitioner asserts, stands for the proposition that industrial law in Arizona does not require that medical testimony directly tie the continuing pain to the industrial injury under the facts here in order to find a permanent disability. This normal requirement is circumvented, he claims, by classifying it as *legal* rather than *medical* causation when temporary aggravation of the preexisting disease is shown and petitioner thereafter evidences continuing pain.

"The fact that the industrial injury was stationary meant only that the fracture to the cervical spine had healed and was no longer a specific contributing medical factor in the disability. That does not mean, however, that the continued disability was not legally related to or caused by the industrial injury. There is a difference between the concept of medical and legal causation." *Mengel*, supra, at 544, 504 P.2d at 75.

In overturning an award based on medical reports that the petitioner's inability to work because of pain was not related to the industrial injury, but rather was the result of underlying ankylosing spondylitis which the injury had aggravated and which had become stationary, the court in *Mengel* reasoned that the facts convincingly showed that the petitioner was able to work prior to the accident, even though he was suffering from a preexisting disease, and that he was thereafter unable to work. As authority for this maneuver the court quoted with approval *Murray v. Industrial Commission*, 87 Ariz. 190, 349 P.2d 627 (1960):

"The difference in the medical and legal concept of cause results from the obvious differences in the basic problems and exigencies of the two professions in relation to causation. By reason of his training, the doctor is thinking in terms of a single, precise cause for a particular condition. The law, however, endeavors to reach an inference of reasonable medical certainty, from a given event or sequence of events, and recognizes more than one cause for a particular injurious result. In the law of torts, it is said that the tortfeasor is not entitled to a perfect specimen upon which to inflict injury. Likewise, in the field of Workmen's Compensation, the employer takes his employee as he is. In legal contemplation, if an injury, operating on an existing bodily condition or predisposition, produces a further injurious result, that result is caused by the injury." 87 Ariz. at 199, 349 P.2d at 633.

In our opinion however, *Murray* simply is not in point. The issue in *Murray* was whether the accident and resulting injury played a role in setting up a sequence which produced the end result of mental disability; i. e. whether the neurosis was entirely the result of circumstances arising out of and following the accident, without reference directly to the injury itself. In *Murray* the court did *not*, as it did in *Mengel*, override specific objective medical findings by classifying the causative factor as incorrect from a "legal" standpoint.

The rationale controlling the distinction to be drawn between *medical* and *legal* causation in the "aggravation" type case is clearly drawn in *Schreven v. Industrial Commission*, 96 Ariz. 143, 393 P.2d 150 (1964).

"*The doctor's testimony is not contradictory.* Neither is there any other evidence contradicting the legal cause of the petitioner's condition. It all is to the effect that the injury did not medically cause the spinal condition *but that it did bring on the symptoms earlier than would have been anticipated.* Therefore, legally, the injury was the proximate cause of the disability." 96 Ariz. at 145, 393 P.2d at 152. (Emphasis added.)

The *Mengel* court also relied upon *Tatman v. Provincial Homes*, 94 Ariz. 165, 382 P.2d 573 (1963). *Tatman*, however, while containing language which may seemingly support petitioner's position, likewise is distinguishable from both *Mengel* and the case at bar.

*" 'I can only state that if [sic] this specific present situation would not be present, if the accident had not occurred. But I still would have to add that from the physician standpoint, disability is what keeps a man from going back to work, and what keeps this man from going back to work is fundamental character disorder, not the symptoms that arose out of his injury.' "* 94 Ariz. at 167, 382 P.2d at 574.

The court concluded that it was fair to say that the accident *triggered* the psychological mechanism which resulted in total disability. *Cf.* the rationale on "triggering" from a legal standpoint in *Best v. Industrial Commission*, 21 Ariz.App. 211, 517 P.2d 1104 (1974).

Clearly the courts in *Schreven* and *Tatman* based their holdings upon a review of the medical testimony which was presented and concluded that a causal connection did exist between the injury and the pain which the preexisting condition subsequently caused him. A review of the medical evidence in the record before us reveals no such medical tsetimony that the injury was a precipitating, contributing or causal factor in bringing about the pain of which petitioner complained at the time of the Industrial Commission hearing. To the contrary, Dr. Haas testified that there was no continuing problem as a result of the injury, and that the preexisting condition had been aggravated only temporarily.

The application of *Mengel* to the facts before us does not lend itself to an easy solution. Nor is it the first time this Court has been called upon to follow *Mengel's* doctrine of legal causation on an almost identical fact situation. In *Price v. Industrial Commission*, 23 Ariz.App. 1, 529 P.2d 1210 (1975), the claimant had sustained a lower back strain superimposed upon a preexisting spondylitis, which was aggravated at least temporarily as a result of the accident. All medical testimony refuted any connection between the injury and continuing pain after the stationary date. The question there, as here, was

whether the findings and award of the Industrial Commission, that the applicant's complaints of pain and discomfort and his physical impairment after the stationary date were due entirely to the preexisting spondylolisthesis, were supported by the evidence.

In *Price* the claimant also cited *Mengel,* and likewise argued that the industrial injury was the *legal* cause of his back condition, since prior to the injury it was asymptomatic and subsequent thereto became symptomatic and disabling. He urged that the finding of no permanent disability should be set aside in spite of the lack of supportive medical testimony establishing a causal connection between injury and subsequent symptomatology.

After noting the burden on the claimant to show that the claimed permanent disability was in fact caused or contributed to by the industrial injury and was not merely a result of the natural progression of the preexisting disease, *Wheeler v. Industrial Commission*, 94 Ariz. 199, 382 P.2d 675 (1963); *Collins v. Industrial Commission,* 3 Ariz.App. 107, 412 P.2d 282 (1966), *Price* held that the claimant had failed to meet that burden with medical testimony, and rejected the argument that the facts supported a finding of legal causation:

"all the medical evidence was to the effect that after May 15, 1972, there was no continuing problem which was a result of the injury sustained in January (testimony of Eugene J. Ryan, M.D.); that by mid-May the effects of the aggravation of the back condition had cleared (testimony of Stanford F. Hartman, M.D.); that while the possibility existed that the injury had created the continuing symptomatology, it was not a probability (testimony of Nathan W. Groce, M.D.)." 23 Ariz.App. at 2, 529 P.2d at 1211.

*Price* distinguished *Mengel* on its facts by stating: "Clearly the court [Mengel] based it holding upon a review of the medical testimony which was presented and con-

cluded that a causal connection did exist between the injury and the pain which the preexisting condition subsequently caused him," and "The element lacking here, and present in *Mengel*, is that of causal connection between the injury and subsequent symptomatology." 23 Ariz.App. at 3, 529 P.2d at 1212.

We do not find the record in *Mengel* to support these assertions in *Price*, since the *Mengel* court specifically noted: "The report of Dr. Fife and Dr. Palmer states unequivocally that the inability to drive 'is not related' to the industrial injury." 18 Ariz.App. at 544, 504 P.2d at 75. *Price* further rationalized *Mengel* as logically drawing a presumption of causal connection from the fact that no other events were shown to have intervened between the time of the injury and subsequent permanent disability, and the fact that a trauma of the type which occurred was likely to cause the preexisting condition to worsen.

However, the record in *Mengel* conceded that the trauma caused an aggravation of the preexisting condition. The justiciable issue was whether the aggravation *continued*, causing or contributing to the disabling pain after the stationary date. As noted above, there was competent medical testimony in *Mengel* that there was no causal connection to the industrial injury. Whether there was a conflict in such testimony (the opinion is not completely clear) is of no moment, since the Commission resolved that issue against the petitioner. The *Mengel* court held however, that this medical evidence was overridden by the fact that it was "convincingly [shown] that petitioner was able to work prior to the accident even though he was suffering from a preexisting disease and that he is now unable to work," and therefore, since legal causation had been established, he "need not show continuing aggravation" by medical evidence.

Clearly the basic question which we must answer here is whether petitioner's inability to work because of pain was due solely to the natural progression of his preexisting disease, unaffected by the industrial injury, or to the disease as aggravated by the injury. Just as clearly, we need not cite a plethora of authorities to assert that the answer to that question must and does lie exclusively within the realm of medical knowledge.

The testimony of Dr. Haas, asserted in terms of medical probability, was clear, certain and unequivocal that the injury was *not* a precipitating, contributing or causal factor in the continuing pain of which petitioner complained at the time of the industrial hearing. For us to indulge in the dichotomy of "legal" versus "medical" causation, and to assert that such competent medical evidence cannot fly in the face of the fact that petitioner was able to work before the injury and unable to work thereafter and therefore has suffered a permanent disability, exceeds the boundaries of judicial review and makes us doctors rather than judges.

We choose not to follow the rationale of *Mengel*. The physicians there, upon whose testimony the hearing officer relied, were fully aware of the fact that the disabling pain did not occur until after the accident when they espoused their diagnoses that it was the result of the underlying disease and *only* the underlying disease. To extrapolate this complete lack of a precipitating or contributing causal factor for the residual pain into a "but for" term of legal causation was to tell the medical profession very simply that they did not know what they were talking about.

■ Arizona's law of workmen's compensation is clear that where an industrial injury, operating on a preexisting disease, aggravates that disease to the extent that a workman is disabled thereby, a compensable claim exists. *Tatman v. Provincial Homes*, 94 Ariz. 165, 382 P.2d 573 (1963); *Mead v. American Smelting & Refining Co.*, 90 Ariz. 32, 363 P.2d 930 (1961); *Montgomery Ward Co., Inc. v. Industrial Commission*, 14 Ariz.App. 21, 480 P.2d 358 (1971). But more is required in the bur-

den of proof than merely establishing an aggravation of a preexisting disease or infirmity, and showing that the claimant was thereafter unable to work.

Petitioner here had the burden of showing, contrary to the assertion in *Mengel*, that the claimed permanent disability was in fact caused, "triggered" or contributed to by the industrial injury, and was not merely the result of the natural progression of the preexisting disease. He had to show not only that the injury caused a temporary aggravation of his preexisting degenerative arthritis, but also that the aggravation had not terminated, and that it continued to be a contributing factor to his pain. See *Wheeler v. Industrial Commission,* supra; *Collins v. Industrial Commission,* supra. It was a burden which he failed to carry, since it could only have been met by competent medical evidence; *Wheeler,* supra.

The award is affirmed.

NELSON, P. J. and STEVENS, J., Retired,[1] concurring.