NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

ROBERT W. MASCHE, *Petitioner,*

*v.*

THE INDUSTRIAL COMMISSION OF ARIZONA, *Respondent,*

NORTHERN ARIZONA CONSOLIDATED FIRE DISTRICT #1,
*Respondent Employer,*

COPPERPOINT MUTUAL INSURANCE, *Respondent Carrier.*

No. 1 CA-IC 14-0082
FILED 11-19-2015

Special Action - Industrial Commission
ICA Claim No. 20121-660224
Deborah Nye, Administrative Law Judge

**AWARD AFFIRMED**

COUNSEL

Toby Zimbalist, Phoenix
*Counsel for Petitioner Employee*

Industrial Commission of Arizona, Phoenix
By Andrew F. Wade
*Counsel for Respondent*

Copperpoint Mutual Insurance Company, Phoenix
By Sharon M. Hensley
*Counsel for Respondents Employer and Carrier*

---

**MEMORANDUM DECISION**

Judge John C. Gemmill delivered the decision of the Court, in which Presiding Judge Diane M. Johnsen and Judge Kent E. Cattani joined.

---

**G E M M I L L**, Judge:

**¶1**        This is a special action review of an Industrial Commission of Arizona ("ICA") award and decision upon review denying the petitioner/employee Robert Masche permanent disability benefits. Two issues are presented on appeal:

> (1) whether the medical testimony adopted by the administrative law judge ("ALJ") is based on an inaccurate factual foundation; and

> (2) whether the award is supported by legal and medical causation.

Because we find that the medical testimony is based on an adequate factual foundation and the ALJ's award is legally sufficient, we affirm.

**BACKGROUND**

**¶2**        Northern Arizona Consolidated Fire District #1 employed Masche as a firefighter and paramedic. During annual fire hose testing on June 7, 2012, a hose burst and struck Masche in the head. He lost consciousness, fell backwards, struck his head on a concrete driveway, and experienced an impact seizure. This incident was witnessed by other firefighters, but Masche has no recollection of what happened before he arrived at the Kingman Regional Medical Center emergency room. He underwent diagnostic testing, including a CT scan of his head which revealed no evidence of "acute intracranial pathology," and he was released.

¶3        Masche filed a workers' compensation claim that was accepted for benefits by the respondent carrier Copperpoint Mutual Insurance Company ("Copperpoint").  He gradually developed additional symptoms including dizziness, headaches, nausea, vomiting, blurred vision, and short-term memory loss.  He saw a variety of medical specialists and underwent repeated diagnostic testing, including additional CT scans and MRIs.

¶4        In March 2013, Copperpoint sent Masche for two independent medical examinations ("IMEs").  On March 1, Masche saw Richard H. Daley, M.D., an orthopedist, Leo Kahn, M.D., a neurologist, and Randy Oppenheimer, M.D., an otolaryngologist, for a group IME.  The doctors received a history of Masche's industrial injury, reviewed his industrially related medical records and diagnostic tests, and examined him.  Based on their findings, the doctors recommended additional diagnostic testing, "vestibular testing as well as dynamic posturography," an "updated EEG," and "a formal neuropsychological independent medical examination."[1]

¶5        Masche underwent the additional recommended diagnostic testing.  Dr. Kahn then performed a repeat IME.  He found no neurological basis for Masche's symptoms and found his condition to be stationary, with no permanent impairment related to the June 7, 2012 industrial injury.  Copperpoint issued a notice of claim status closing Masche's claim with no permanent impairment based on Dr. Kahn's IME.

¶6        Masche timely protested the closure, and the ICA scheduled a hearing.  The ALJ heard testimony from Masche and Dr. Kahn as well as another neurologist, M.A. Kazmi, M.D.  Following the hearing, the ALJ entered an award for temporary disability benefits.  Masche timely requested administrative review, but the ALJ summarily affirmed the award.  Masche next brought this appeal.

¶7        This court has jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") sections 12-120.21(A)(2), 23-951(A), and Arizona Rules of Procedure for Special Actions 10.

---

[1] This IME was performed on November 7, 2013, by John T. Beck, Ph.D., and is summarized in the doctor's twenty-four page report.

**ANALYSIS**

¶8        In reviewing findings and awards of the ICA, we defer to the ALJ's factual findings but review de novo questions of law. *Young v. Indus. Comm'n*, 204 Ariz. 267, 270, ¶ 14 (App. 2003). We consider the evidence in the light most favorable to upholding the ALJ's award. *Lovitch v. Indus. Comm'n*, 202 Ariz. 102, 105, ¶ 16 (App. 2002).

**I.        Foundation of Medical Testimony**

¶9        Masche argues the medical testimony adopted by the ALJ to support the award is based on a factually inaccurate foundation, making it legally insufficient to support the award. Masche asserts that Dr. Kahn's opinion is based on an outmoded medical premise, i.e., that the persistence of his symptomatology is inconsistent with the injury he sustained, or, as Dr. Beck stated in his neuropsychological report, "no one . . . who suffers a mild concussion can have ANY neurological consequence to this brief, rapidly reversing metabolic event."

¶10        In response, Copperpoint argues first that Masche failed to raise the issue of "alleged inadequate factual foundation either at hearing or on administrative review." In general, this court will not consider an issue on appeal that was not raised before the ALJ. *See T.W.M. Custom Framing v. Indus. Comm'n,* 198 Ariz. 41, 44, ¶ 4 (App. 2000). This rule stems in part from the requirement that a party must develop its factual record before the agency and give the ALJ an opportunity to correct any errors. *See id.; see also Kessen v. Stewart*, 195 Ariz. 488, 493, ¶ 19 (App. 1999). It is also consistent with the general principle that a petitioner should exhaust administrative remedies before seeking judicial review. *Teller v. Indus. Comm'n*, 179 Ariz. 367, 371–72 (App. 1994).

¶11        Our review of Masche's request for review reveals that although he did not expressly argue during the ICA proceeding that Dr. Kahn's and Dr. Beck's medical opinions were foundationally deficient, he did raise questions regarding the foundational accuracy of those opinions. For this reason, we address the merits of Masche's argument.

¶12        Masche argues that Dr. Kahn's and Dr. Beck's opinions are discredited by the controversy currently surrounding head injuries, and specifically the National Football League's (NFL's) investigation and research regarding traumatic brain injuries (TBIs). Masche asks this court to take judicial notice of this controversy, and points to the NFL's

acknowledgement that "concussions can have lasting consequences." This court has recognized that

> '[b]efore a court or . . . the Industrial Commission, can take judicial notice of a fact, the basic requirement must be met . . . . . A fact to be judicially noticed must be certain and indisputable, requiring no proof, and no evidence may be received to refute it.'

*Town of El Mirage v. Indus. Comm'n*, 127 Ariz. 377, 382 (App. 1980) (quoting *Utah Construction Co. v. Berg*, 68 Ariz. 285, 291 (1949)); *see also* Ariz. R. Evid. 201(b).

**¶13** Although there is substantial medical discussion directed toward the cause and effect of TBIs, we cannot conclude that this discussion has reached a definitive conclusion or otherwise requires medical experts (or ALJs) to subscribe to any particular viewpoint. *See, e.g.,* Jack Hubbard et. al, *A Traumatic Brain Injury is a Headache in Both Medical & Legal Circles*, 50 Tort Trial & Ins. Prac. L.J. 809 (Spring-Summer 2015). In other words, the issues as to which Masche seeks judicial notice are not sufficiently certain and indisputable to require the factfinder to take a particular viewpoint regarding the lasting effects of concussion injuries in this case.

**¶14** Furthermore, to resolve conflicts in medical testimony, the ALJ may consider the qualifications and backgrounds of the expert witnesses, their experience in diagnosing the type of injury incurred, and the diagnostic methods used. *Carousel Snack Bar v. Indus. Comm'n,* 156 Ariz. 43, 46 (1988); *see also Castillo v. Indus. Comm'n*, 24 Ariz. App. 315, 316 (App. 1975) (declining to dictate what diagnostic tools a physician must use in reaching his opinion). Additionally, an ALJ may piece together portions of expert testimony from different witnesses in a reasonable way by choosing to "accept part of the testimony of a witness and reject other parts." *Fry's Food Stores v. Indus. Comm'n*, 161 Ariz. 119, 122–23 (1989).

**¶15** In this case, Dr. Kahn and Dr. Beck subscribed to one view of head injuries, while Dr. Kazmi subscribed to another, with Dr. Kazmi concluding that nerve tissue in Masche's brain was damaged during the industrial injury and that currently available testing is inadequate to measure this damage. It was the ALJ's duty to resolve these conflicts in the evidence, *Perry v. Indus. Comm'n*, 112 Ariz. 397, 398 (1975), and she did so in favor of the opinions of Dr. Kahn and Dr. Beck. Those opinions were not legally insufficient on the basis that they failed to adopt the still-

inconclusive findings of the NFL concussion studies. *See supra* ¶ 13. Because Dr. Kahn and Dr. Beck had adequate foundations for their medical opinions, the ALJ did not abuse her discretion by relying on those opinions. We find no error.

## II.      Legal and Medical Causation

**¶16**          Masche next argues the ALJ failed to recognize that Dr. Beck's report established a compensable psychological impairment. In addition to his physical symptoms, Masche also complains of mental and emotional impairments, including post-traumatic headaches, depression, memory loss, and loss of concentration. Because Dr. Beck's report noted Masche had no mental condition or symptoms prior to the accident, Masche argues the report necessarily establishes the accident as the cause of his current psychological impairment. He also claims Dr. Beck's report establishes that Masche had preexisting emotional and mental conditions that were exacerbated by the accident, making the physical manifestation of his injuries more severe. Accordingly, Masche argues the ALJ erred by failing to differentiate between legal and medical causation, and the award should be set aside.

**¶17**          Workers' compensation claims for mental injuries are governed by A.R.S. § 23-1043.01(B), which states that a mental or psychotic injury is not compensable "unless . . . some physical injury related to the employment was a substantial contributing cause of the mental injury, illness or condition." In order to recover for a mental injury, a claimant "must show that each and every link in the causal chain between the physical injury and the mental injury is a substantial contributing cause of each succeeding link." *Toto v. Indus. Comm'n*, 144 Ariz. 508, 513 (App. 1985).

**¶18**          When a preexisting condition is aggravated by or combines with an industrial injury to create "a further injurious result," the condition may be compensable. *See Kentucky Fried Chicken v. Indus. Comm'n*, 141 Ariz. 561, 564 (App. 1984); *see also Dugan v. Am. Exp. Travel Related Servs. Co., Inc.*, 185 Ariz. 93, 100 (App. 1995). But in this case, Masche did not present any psychological testimony, nor did he assert he had sustained a mental injury until his request for review. The only neuropsychological testimony presented was Dr. Beck's IME report. Masche is correct that Dr. Beck's findings acknowledge that a preexisting mental condition may have been a contributing factor to Masche's current symptoms. Dr. Beck's report does not, however, compel this conclusion, nor does it necessarily establish that any mental impairment was a consequence of the industrial injury. Instead,

Dr. Beck points to preexisting conditions as one of several possible explanations for Masche's current impairment. Dr. Beck also explains that Masche's symptoms may be the result of medication side effects, chronic pain, conscious and unconscious malingering, or the stress of litigation.

**¶19** Accordingly, the ALJ was not required to credit Dr. Beck's report as conclusively establishing that the accident, and all related events thereafter, were substantial contributing causes of Masche's mental injury. Nor was the ALJ bound by the report to conclude that Masche's injuries were made worse because he suffered from a preexisting mental condition. In resolving the conflicting medical opinions in the testimony and reports, it was within the ALJ's discretion to reject portions of the Beck report while accepting other portions. *See Fry's Food Stores*, 161 Ariz. at 122–23. We conclude, therefore, that the ALJ did not abuse her discretion by entering the award.

## CONCLUSON

**¶20** For these reasons, we affirm the award.



Ruth A. Willingham · Clerk of the Court
FILED: ama