IN THE

# Arizona Court of Appeals
### Division One

---

JOSE AGUAYO, *Petitioner*,

*v.*

THE INDUSTRIAL COMMISSION OF ARIZONA, *Respondent,*

CEMEX, *Respondent Employer,*

GALLAGHER BASSETT SERVICES, *Respondent Carrier.*

No. CA-IC 13-0048
FILED 08-12-2014

---

Special Action - Industrial Commission
ICA CLAIM NO. 20101-400068
CARRIER CLAIM NO. 001151-011042-WC01

Anthony Halas, Administrative Law Judge

**AWARD AFFIRMED**

---

COUNSEL

Snow, Carpio & Weekley, PLC, Phoenix
By Chad T. Snow

Toby Zimbalist, Phoenix

*Co-Counsel for Petitioner Employee*

Industrial Commission of Arizona, Phoenix
By Andrew F. Wade
*Counsel for Respondent*

Jardine, Baker, Hickman & Houston, Phoenix
By Stephen Baker
*Counsel for Respondents Employer and Carrier*

---

## OPINION

Judge Jon W. Thompson delivered the opinion of the Court, in which Presiding Judge Andrew W. Gould and Judge Peter B. Swann joined.

---

**T H O M P S O N**, Judge:

**¶1**      This is a special action review of an Industrial Commission of Arizona (ICA) award and decision upon review for temporary disability benefits.  The petitioner employee (claimant) presents two issues on appeal:

> (1) whether Edward J. Dohring, M.D.'s testimony was legally sufficient to support the award; and

> (2) whether the ICA's May 13, 2011 award precluded the administrative law judge in the current proceedings from finding that the May 3, 2010 industrial injury caused only a temporary aggravation of the claimant's L5-S1 disc protrusion.

Because we conclude that Dr. Dohring's testimony was legally sufficient to support the award and that preclusion does not apply, we affirm.

### JURISDICTION AND STANDARD OF REVIEW

**¶2**      This court has jurisdiction pursuant to Arizona Revised Statutes (A.R.S.) sections 12-120.21(A)(2) (2003), 23-951(A) (2012), and

Arizona Rules of Procedure for Special Actions 10 (2013).[1]  In reviewing findings and awards of the ICA, we defer to the administrative law judge's factual findings, but review questions of law de novo.  *Young v. Indus. Comm'n*, 204 Ariz. 267, 270, ¶ 14, 63 P.3d 298, 301 (App. 2003).  We consider the evidence in a light most favorable to upholding the administrative law judge's award.  *Lovitch v. Indus. Comm'n*, 202 Ariz. 102, 105, ¶ 16, 41 P.3d 640, 643 (App. 2002).

## FACTUAL AND PROCEDURAL HISTORY

**¶3**        The claimant worked for the respondent employer, Cemex, for more than twenty years.  He sustained an industrial back injury on July 20, 1990, and underwent two back surgeries for an L4-5 disc herniation.  This claim closed with a ten percent permanent impairment and work restrictions, and the claimant returned to work at Cemex.

**¶4**        The claimant continued to perform his regular work until May 3, 2010, when he sustained a new industrial injury to his back.  He filed a workers' compensation claim, which was accepted for benefits, and then closed following an independent medical examination (IME) by James Maxwell, M.D.  The claimant timely requested a hearing on the closure of his claim, and he also petitioned to reopen his 1990 injury claim.

**¶5**        When the petition to reopen was denied for benefits, the claimant requested another hearing.  The closure and reopening issues were consolidated for hearing, and administrative law judge Layna Taylor (ALJ Taylor) heard testimony from the claimant, Brad S. Sorosky, M.D., Terry E. McLean, M.D., and James H. Maxwell, M.D.  ALJ Taylor resolved the medical conflicts in favor of Drs. Sorosky and McLean, and entered an award denying the petition to reopen the 1990 injury claim and finding that the May 3, 2010 injury was not stationary.  This award became final.

**¶6**        The claimant continued to receive conservative treatment from Dr. Sorosky, including prescription medication, an epidural steroid injection, and electrodiagnostic testing (EMG).  The EMG study was abnormal and demonstrated a "chronic[2] right L5 radiculopathy with no

---

[1] Absent material revisions after the relevant dates, statutes and rules cited refer to the current version unless otherwise indicated.

[2] Chronic was defined as anything over six months old.

active denervation." In August 2011, following the epidural injection, the claimant reported a fifty percent improvement in his pain and declined additional treatment. In December 2011, the claimant returned to Dr. Sorosky and reported that his pain was "worse than ever," but he refused an additional epidural injection.

¶7　　　　On January 4, 2012, Dr. Dohring performed an IME of the claimant and reported:

> The claimant's current symptoms are consistent with lumbar disc degeneration and right lumbar radicular irritation. On a non-industrial basis, they may respond to further treatment. However, the claimant wants no further invasive treatment such as injections or surgery unless there is a 99% chance of success. He also displays multiple positive Waddell's signs on examination and displays subjective complaints greater than would be expected for objective findings. Given the above, I would not recommend surgical intervention regardless of industrial claim status.
>
> In addition, unfortunately, he left his job with feelings of anger towards his employer and feeling that his employer treated him disrespectfully. This circumstance alone has been shown to be a powerfully negative prognostic indicator with regard to long-term functional outcome in patients with chronic pain.

It was Dr. Dohring's opinion that the claimant was stationary with no permanent impairment related to the May 3, 2010 industrial injury.

¶8　　　　The respondent carrier, Gallagher Basssett, relied on Dr. Dohring's IME to find the claimant stationary with no permanent impairment. The claimant timely protested the closure of his claim, and administrative law judge Anthony Halas (ALJ Halas) scheduled an ICA hearing for testimony from the claimant and Drs. Sorosky and Dohring. Following the hearing, ALJ Halas entered an award for temporary disability benefits.

¶9　　　　ALJ Halas resolved the medical conflict in favor of Dr. Dohring and found that preclusion did not prevent a finding that the claimant's May 3, 2010 industrial injury caused only a temporary

aggravation of his preexisting back condition. In reaching this conclusion, ALJ Halas recognized:

> In Finding No. 9 of her [2011] Decision, Judge Taylor found that Dr. Sorosky '…agreed with Dr. McLean's assessment that the 2010 injury was a lumbosacral myoligamentous sprain/strain which aggravated the applicant's preexisting lumbar spinal condition.' In Finding No. 10, the judge found that Dr. McLean had '…concluded, based on the history given, his examination, and the findings on the June 2010 MRI scan, that the May 2010 injury had resulted in an aggravation of the applicant's preexisting condition, including a right L5-S1 disk protrusion.'

The claimant requested administrative review, but ALJ Halas summarily affirmed the award. The claimant next brought this appeal.


## DISCUSSION

¶10    The claimant first argues that ALJ Halas erred by relying on Dr. Dohring's foundationally inadequate opinion to deny continuing benefits. In order to receive continuing benefits, the claimant had the burden to prove that his physical condition was causally related to his industrial injury and that he was not yet medically stationary. *See, e.g., Lawler v. Indus. Comm'n*, 24 Ariz. App. 282, 284, 537 P.2d 1340, 1342 (1975). When this causal connection is not readily apparent, it must be established by expert medical testimony. *E.g., McNeely v. Indus. Comm'n*, 108 Ariz. 453, 455, 501 P.2d 555, 557 (1972). Typically, back and spine injuries require expert medical testimony to demonstrate the causal connection between the claimant's medical condition and the industrial accident. *Western Bonded Prods. v. Indus. Comm'n,* 132 Ariz. 526, 527-28, 647 P.2d 657, 658-59 (App. 1982).

¶11    In this case, the claimant presented testimony from Dr. Sorosky and Gallagher Bassett presented conflicting testimony from Dr. Dohring. It is the administrative law judge's duty to resolve all conflicts in the evidence and to draw all warranted inferences. *See, e.g., Malinski v. Indus. Comm'n*, 103 Ariz. 213, 217, 439 P.2d 485, 489 (1968). Here, ALJ Halas resolved the medical conflict in favor of Dr. Dohring, and we review his testimony to determine whether it supports the award.

¶12    This court has recognized that "medical testimony can be so

weakened by proof of an inaccurate factual background that the testimony cannot be said to constitute 'substantial evidence,'" but not every factual inaccuracy will undermine a doctor's opinion and warrant its disregard. *See Desert Insulations v. Indus. Comm'n*, 134 Ariz. 148, 151, 654 P.2d 296, 299 (App. 1982) (citations omitted). Instead, the inaccuracy must be material or significant to the doctor's medical opinion. *Fry's Food Stores v. Indus. Comm'n*, 161 Ariz. 119, 122, 776 P.2d 797, 800 (1989).

¶13 The claimant argues that Dr. Dohring inaccurately ruled out the May 3, 2010 injury as the cause of his radiculopathy because he misinterpreted Banner's medical records and assumed that the claimant's right radicular leg symptoms did not occur until six weeks after the injury. He asserts that Banner's May 10, 2010 record establishes that these symptoms began within a week after the injury:

> HISTORY OF PRESENT ILLNESS: This is a follow-up visit for Jose Aguayo, a 47 year-old male, whose primary complaint is injury located in the low back. Unchanged essentially since last visit [5/5/10]. Perhaps slightly. *Pain is maximal R lower back. Pain radiates down lateral L thigh at times, but not below knee.* Hurts to move. Is on lite (sic) duty. No stiffness. Issue is pain only.
>
> * * * *
>
> PHYSICAL EXAMINATION: Lumbar Spine – Posture-stands and sits slumped somewhat forward. Gait slow. Palpation – no muscle spasm. *Tenderness bilateral lower lumbar muscles. Straight leg raising on the L side increases the pain and when supine, hip rotation increases the pain. SLR on the R does cause more pain,* hip rotation does not increase the pain. ROM:: flexion brings fingertips to knees only. Extension is unremarkable and lateral bending, causes some but not severe pain.

While this record establishes that the claimant had pain in his lumbar spine, worse on the right than the left, the only reference to radicular pain is down the left leg.

¶14 The first reference in Banner's records to radicular pain into the right leg occurs on June 3, 2010. Although Dr. Dohring testified that the right radicular leg symptoms did not begin until six weeks after the

May 3, 2010 injury, according to this record, they began one month after the injury. We find that this does not undermine Dr. Dohring's opinion. Further, when Dr. Dohring was asked to assume that the right leg symptoms were related to the May 3, 2010 industrial injury, his opinion remained that the claimant had significant preexisting degenerative changes in his lumbar spine which were temporarily aggravated by the May 3, 2010 strain/sprain injury.

¶15          The claimant also argues that Dr. Dohring's opinion is equivocal with regard to the MRI and EMG findings. *See Rosarita Mexican Foods v. Indus. Comm'n,* 199 Ariz. 532, 536, ¶ 13, 19 P.3d 1248, 1252 (App. 2001) (an expert's opinion is equivocal if it is subject to two or more interpretations or the expert avoids committing to a particular opinion). Dr. Dohring reviewed the medical records from both the June 10, 2010 MRI and August 17, 2011 EMG in his IME report:

> On 6/10/10, an MRI of the lumbar spine without contrast was performed and interpreted by the radiologist as showing L3-4 central disc protrusion with deformity of the thecal sac, L4-5 lumbar spondylolytic disease and postoperative changes with bilateral foraminal stenosis and compromise of the exiting nerve roots, L5-S1 degenerative disc disease with left greater than right foraminal stenosis.[3]
>
> * * * *
>
> 8/17/11 / Desert Spine & Sports / Brad Sorosky, M.D. / EMG Evaluation / Results: Electrodiagnostic impression is abnormal study. There is evidence of chronic right L5 radiculopathy with no active denervation. There is also evidence of generalized sensory peripheral neuropathy consistent with diabetic neuropathy.

¶16          During the hearing, Dr. Dohring testified about these diagnostic studies:

> The EMG . . .  shows a chronic radiculopathy, but does not date that to the more recent injury [May 3, 2010], but rather is unable to date it as opposed to – and given the

---

[3] L4-5 and L5-S1 are distinct disc levels in the lumbar spine.  38 Am. Jur. Proof of Facts 2d § 6 fig. 5 (2014).

need for surgery twenty years prior, in my opinion, is more probably than not related to that original surgery – related to the reasons for that surgery – in other words, the herniated disc pushing on the nerve and then causing problems twice in two years.

And with regard to the MRI, the changes are all changes that can be chronic. Some of those changes could be somewhat possibly more acute, but there's nothing on the MRI that – that can show us that the MRI done one month after the injury approximately, or five weeks after the injury is – has anything acute going on where something on that can definitely be said to be acute. In other words, there's no edema or inflammation on the MRI that says this is something occurring recently, so we don't have any – and nothing on exam also would have, or the documented exams that he was seen to have in the month or two following his injury – there's no findings on there that are objective with regard to examination findings that would be acute.

Based on a complete reading of the doctor's records and testimony, we do not find his opinion equivocal. *See Perry v. Indus. Comm'n,* 112 Ariz. 397, 398, 542 P.2d 1096, 1097 (1975) (administrative law judge considers all relevant evidence, both testamentary and documentary).

¶17 The claimant last argues that ALJ Halas erred by failing to preclude Dr. Dohring's testimony that his May 3, 2010 injury caused only a temporary aggravation of his preexisting back condition. Issue preclusion occurs when the issue to be litigated was actually litigated in a prior proceeding and a final judgment was entered, the party against whom the doctrine is to be invoked had a full opportunity to litigate the issue, and the issue was essential to the final judgment. *Circle K Corp. v. Indus. Comm'n,* 179 Ariz. 422, 425, 880 P.2d 642, 645 (App. 1993). "Unless the applicability of issue preclusion involves disputed questions of fact, its applicability is a question of law for this court to determine independently." *Special Fund Div., Indus. Comm'n v. Tabor*, 201 Ariz. 89, 92, ¶ 20, 32 P.3d 14, 17 (App. 2001) (citation omitted).

¶18 The 2011 award determined two issues: (1) whether the claimant's 1990 claim should be reopened, and (2) whether his 2010 injury was medically stationary. ALJ Taylor denied reopening but found that the 2010 injury was not medically stationary, and that claimant was

entitled to continuing benefits to treat the aggravation of his preexisting back condition. Because the aggravation was not yet stationary, it was not known whether it would be temporary or permanent.[4]

**¶19** The claimant asserts that Dr. McLean's testimony, adopted in the 2011 award, conclusively established that the May 3, 2010 injury caused the L5-S1 disc protrusion. With regard to Dr. McLean's testimony, ALJ Taylor found that, "He concluded, based on the history given, his examination, and the findings on the June 2010 MRI scan, that the May 2010 injury had resulted in an aggravation of the applicant's preexisting condition, including a right L5-S1 disk protrusion." ALJ Taylor adopted the opinions of Drs. Sorosky and McLean to find that the claimant's condition in 2011 was not stationary and that he required additional diagnostic testing and epidural injections to treat the 2010 injury.

**¶20** The issue in the current proceedings was whether the claimant's 2010 injury was medically stationary, and if so, whether he had sustained a permanent impairment. We have reviewed the testimony from the 2011 hearing and conclude that neither Dr. McLean's testimony nor the 2011 award established anything other than that the claimant's preexisting degenerative back condition was aggravated by the 2010 injury and had not yet become stationary. More is required to show permanent disability than merely establishing an aggravation of a preexisting disease or infirmity and thereafter the claimant's inability to work. *Arellano v. Indus. Comm'n*, 25 Ariz. App. 598, 603-04, 545 P.2d 446, 451-52 (1976). The claimant must establish that his "claimed permanent disability was in fact caused, 'triggered' or contributed to by the industrial injury, and was not merely the result of the natural progression of the preexisting disease." *Id.* at 604, 545 P.2d at 452. The evidence supports ALJ Halas's conclusion that the temporary aggravation of the claimant's preexisting back condition had become stationary with no permanent impairment, and we determine that issue preclusion does not apply.

---

[4] Workers' compensation claims are administered through a progression of separate claim stages. *See*, *e.g.*, *Hardware Mut. Cas. Co. v. Indus. Comm'n*, 17 Ariz. App. 7, 9, 494 P.2d 1353, 1355 (1972). Where applicable, after compensability is established, a claimant typically passes through three claim stages: temporary total disability, during which he is unable to work; temporary partial disability, during which he may engage in some work but continues to need active medical treatment; and permanent disability, after his condition has become medically stationary. *Id.*

## CONCLUSION

¶21        For all of the foregoing reasons, we affirm the award.



Ruth A. Willingham · Clerk of the Court
FILED: gsh