IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

KEVIN MILLER, *Petitioner*,

*v.*

THE INDUSTRIAL COMMISSION OF ARIZONA, *Respondent*,

SUN DEVIL FIRE EQUIPMENT, *Respondent Employer*,

AMERISURE INSURANCE, *Respondent Carrier*.

No. 1 CA-IC 15-0075
FILED 7-14-2016

---

Special Action - Industrial Commission
ICA Claim No. 20121-450351
Carrier Claim No. 1272801

Aryka S. Radke, Administrative Law Judge

**AWARD SET ASIDE**

---

COUNSEL

Snow, Carpio & Weekley, P.L.C., Phoenix
By Dennis R. Kurth
*Counsel for Petitioner Employee*

Industrial Commission of Arizona, Phoenix
By Jason M. Porter
*Counsel for Respondent ICA*

Jardine, Baker, Hickman & Houston, P.L.L.C., Phoenix
By Stephen C. Baker
*Counsel for Respondents Employer and Carrier*

---

## OPINION

Presiding Judge Lawrence F. Winthrop delivered the opinion of the Court, in which Judge Patricia K. Norris and Judge Kenton D. Jones joined.

---

**W I N T H R O P**, Presiding Judge:

¶1        This is a special action review of an Industrial Commission of Arizona ("ICA") award and decision upon review finding the back injury of the petitioner employee, Kevin Miller ("claimant"), medically stationary. The dispositive issue presented is whether the award of the administrative law judge ("ALJ") adopting the opinion of Edward J. Dohring, M.D., and terminating the claimant's active medical treatment violated principles of issue or claim preclusion.  Because preclusion applies, the ALJ erred by adopting Dr. Dohring's opinion; accordingly, we set aside the award.

### I. PROCEDURAL AND FACTUAL HISTORY[1]

¶2        The claimant installed fire alarms and security systems for the respondent employer, Sun Devil Fire Equipment, Inc. ("Sun Devil").  In May 2012, the claimant sustained a back injury when the company vehicle he was driving was rear-ended.  He filed a workers' compensation claim, which was accepted for benefits by the respondent carrier, Amerisure Insurance Company ("Amerisure").  The claimant received conservative medical treatment until his claim was closed following an independent medical examination ("IME") by John Beghin, M.D., a board-certified orthopedic spinal surgeon.

¶3        The claimant timely protested, and ALJ Robert F. Retzer heard testimony from the claimant; his treating orthopedic spinal surgeon, Michael Howard Winer, M.D.; and Dr. Beghin, the carrier's medical expert. In a December 2013 award, the ALJ adopted Dr. Winer's causation and treatment opinions and continued the claimant's medical benefits.  That award became final, and the claimant continued to receive treatment from Dr. Winer.  Amerisure later sent the claimant to Dr. Dohring, another spinal specialist, for a new IME, conducted on July 30, 2014.  Based on Dr.

---

[1]        We consider the evidence in a light most favorable to upholding the ALJ's award.  *Lovitch v. Indus. Comm'n*, 202 Ariz. 102, 105, ¶ 16, 41 P.3d 640, 643 (App. 2002).

Dohring's report, Amerisure again closed the claimant's claim for active medical treatment.

¶4        Again, the claimant timely protested.  In 2015, a different ALJ, Aryka S. Radke, heard testimony from the claimant, Dr. Winer, and Dr. Dohring.  In an August 2015 award, the ALJ adopted Dr. Dohring's opinion and not Dr. Winer's—whose opinion on the same issues had been earlier accepted by ALJ Retzer—and closed the claim for active medical treatment, allowing for only supportive care.  The claimant timely requested administrative review, arguing in part the ALJ was precluded as a matter of law from relying on Dr. Dohring's opinion.  The employer and carrier responded to the merits of that argument, and urged that the award be affirmed.  After reviewing the memoranda of counsel and the file, the ALJ affirmed the award.

¶5        The claimant then timely brought this petition.  We have jurisdiction pursuant to Arizona Revised Statutes sections 12-120.21(A)(2) (2016) and 23-951(A) (2012), and Rule 10 of the Arizona Rules of Procedure for Special Actions.

## II. ANALYSIS

¶6        The claimant argues that principles of preclusion should have prevented the ALJ from adopting Dr. Dohring's opinion and terminating his active medical benefits.[2]

---

[2]        Generally, preclusion is an affirmative defense which, if not timely raised before the ALJ and referenced in the subsequent award, is considered waived.  *See generally Superlite Bldrs. v. Indus. Comm'n*, 126 Ariz. 51, 53, 612 P.2d 507, 509 (App. 1980); *Cotton v. Indus. Comm'n*, 26 Ariz. App. 58, 61, 546 P.2d 35, 38 (1976).  Timely notice of the defense also allows the ALJ the opportunity to consider the issue, and also allows the parties a full opportunity to develop the record at the hearing as it relates to that issue. *See, e.g., Priedigkeit v. Indus. Comm'n*, 20 Ariz. App. 594, 598, 514 P.2d 1045, 1049 (1973) (recognizing that parties need to raise issues as early as possible in the hearing process to allow for thorough consideration and a complete record).  Here, it appears the claimant did not raise the issue or otherwise object to Dr. Dohring's opinion until he requested administrative review by the ALJ.  Neither the response to the claimant's request for review nor the answering brief argued that the claimant has waived the preclusion issue; accordingly, we consider the issue on the merits.

**¶7**       Because workers' compensation claims are administered sequentially, phases of the process (*e.g.*, compensability, average monthly wage, transfer from total temporary to partial disability status, medically stationary status, impairment rating, loss of earning capacity, award of permanent benefits, etc.) are resolved by a carrier's separate Notices of Claim Status, and if protested, by separate determinations by an ALJ. When any of these determinations, either by Notice of Claim Status or by ALJ decision, become final, they are entitled to preclusive effect. *See, e.g., Hardware Mut. Cas. Co. v. Indus. Comm'n*, 17 Ariz. App. 7, 9-10, 494 P.2d 1353, 1355-56 (1972) (recognizing that workers' compensation claims are administered through a progression of separate claim stages).

**¶8**       An ICA award has preclusive effect through application of principles of issue preclusion and claim preclusion. *See Circle K Corp. v. Indus. Comm'n*, 179 Ariz. 422, 428, 880 P.2d 642, 648 (App. 1993). Issue preclusion bars relitigation of an issue that was previously litigated, determined, and essential to a final judgment. *Special Fund Div., Indus. Comm'n v. Tabor*, 201 Ariz. 89, 92, ¶ 20, 32 P.3d 14, 17 (App. 2001) (citing *Circle K Corp.*, 179 Ariz. at 425, 880 P.2d at 645); *Red Bluff Mines, Inc. v. Indus. Comm'n*, 144 Ariz. 199, 204-05, 696 P.2d 1348, 1353-54 (App. 1984). "[I]ssue preclusion may apply when successive claim stages have issues of fact or of law in common." Thomas M. Gordon and Melinda K. Poppe, *Reopening, Rearrangement, and Settlement*, Arizona Workers' Compensation Handbook § 11.4.2 (Ray J. Davis *et al*. eds., 1992). Claim preclusion bars relitigation of the same claim, i.e., preclusion of matters actually decided or that could have been decided after a timely protest. *W. Cable v. Indus. Comm'n*, 144 Ariz. 514, 518, 698 P.2d 759, 763 (App. 1985).

**¶9**       The applicability of preclusion to a workers' compensation matter is a mixed question of fact and law; accordingly, we apply a deferential standard of review to the determination of disputed facts supported by reasonable evidence, and apply an independent standard of review to the ultimate determination of whether these facts trigger preclusion. *A.J. Bayless v. Indus. Comm'n*, 179 Ariz. 434, 439, 880 P.2d 654, 659 (App. 1994); *see also Aguayo v. Indus. Comm'n*, 235 Ariz. 413, 417, ¶ 17, 333 P.3d 31, 35 (App. 2014) ("Unless the applicability of issue preclusion involves disputed questions of fact, its applicability is a question of law for this court to determine independently." (quoting *Tabor*, 201 Ariz. at 92, ¶ 20, 32 P.3d at 17)).

**¶10**       To determine whether preclusion applies, we examine the issues raised and the evidence presented at the 2013 and 2015 hearings.

¶11        Pertinent pre-injury medical history for the claimant indicates he was in a 1999 motor vehicle accident that caused a burst fracture of his L4 disc and required a fusion with placement of rods and screws at the L2-L5 levels.  After two years, however, the claimant had made a full recovery and had no work restrictions.

¶12        At the time of his industrial injury in 2012, the claimant had worked at Sun Devil for several years as the lead technician on an installation crew, performing physically strenuous work.  He was driving a company truck in heavy traffic when his vehicle was rear-ended.  Initially, the claimant had neck and low back pain, but after several days, the pain began to radiate down his right leg.  He received conservative treatment at Concentra, but when his symptoms continued, he was referred to specialists for additional diagnostic testing and treatment.

### The 2013 Hearings and ICA Award

¶13        In June 2013, the claimant came under the care of Dr. Winer, a board-certified orthopedic spinal surgeon, who diagnosed the following:

1.  Pre-existing L2-L5 lumbar fusion.
2.  Previous L4 burst fracture status post laminectomy fusion with residual epidural changes and arachnoiditis[3] evident behind L4.
3.  L5-S1 facet arthrosis.[4]

---

[3]        *"Arachnoiditis"* is inflammation and formation of scar tissue, in this case, in the *cauda equina*, which houses a collection of spinal nerves and nerve roots from the lumbar spine.  *See* Dorland's Illustrated Medical Dictionary ("Dorland's") 126 (25th ed. 1974).  Irritation and/or compression in the *cauda equina* can produce pain and disrupt sensation and movement.  The parties agree the claimant has arachnoiditis as a result of his 1999 accident, and that the 2012 industrial injury has aggravated that condition and made it symptomatic.

[4]        *"Facet arthropathy"* refers to arthritic changes in the posterior bones of the spine, here at the L5-S1 level.  *See generally* Dorland's at 148, 563-64.  These arthritic changes, also referred to as foraminal narrowing, can be the result of the aging process or trauma or a previous back injury, or a combination of such factors.

4. Cervical sprain/strain as a result of motor vehicle accident with mild residual posterior cervical myofascial pain.
5. Aggravation of pre-existing but asymptomatic arachnoiditis with L5 radiculopathy[5] on the right.
6. Aggravation of pre-existing facet arthrosis with persistent lumbar pain as a result of the motor vehicle accident.
7. Right [sacroiliac ("SI")] joint dysfunction onset as a result of motor vehicle accident.

¶14 Dr. Winer reported that, notwithstanding the carrier's administrative closure of the case, the claimant had, in addition to the industrially related aggravation of pre-existing conditions, a right SI joint condition causally related to the industrial injury, all of which required further evaluation and active medical treatment:

> Assuming his claim is . . . reopened to active care, the first step would be a new MRI and a reevaluation at that time. An additional trial with active physical therapy might be next. Assuming after he recovers from his current treatments, the positive findings in the right SI joint remain, I would recommend repeat right SI joint without sedation with evaluation pre- and post[-]injection in order to gauge the percentage of improvement immediately following the injection. If this again significantly improves his pain short-term, I would repeat the procedure one more time with a combination of lidocaine plus Marcaine in order to reassess his improvement following the injection.
>
> *I do feel he has symptomatic facet arthropathy at L5-S1, i.e., the only level below his fusion. I also feel he has aggravated pre-existing arachnoiditis with resultant L5 radiculopathy on the right. This might also be related to his L5 foraminal narrowing.*

(Emphasis added.) Dr. Winer testified that if the conservative treatment was unsuccessful, the claimant might need an SI joint fusion and/or an extension of his existing fusion to the L5-S1 level.

¶15 Dr. John Beghin, also a board-certified orthopedic spinal surgeon, testified regarding his examination of the claimant. Dr. Beghin diagnosed a soft tissue injury—specifically, a back strain/sprain from the

---

5 *"Radiculopathy"* is disease of the nerve roots, often resulting in radiation of pain or other abnormal sensation. *See* Dorland's at 1303.

industrial injury that caused an acute stretching of the pre-existing arachnoiditis at L4, which resulted in inflammation and triggered an L5 radiculopathy on the right side. Dr. Beghin testified he did not endorse any treatment of the SI joints, stating that, in his opinion, such treatment had not been scientifically validated. Dr. Beghin concluded that the claimant's condition was stationary and required no additional active medical treatment.

¶16 ALJ Retzer was thus asked to decide whether the 2012 industrial accident was merely a soft tissue injury, expected to resolve with only some supportive care, or whether it caused any direct injury to the claimant's SI joints and/or disrupted the pre-existing, abnormal but asymptomatic spinal and neuro-spinal conditions caused by the 1999 accident, and required continuing active medical investigation and treatment. The ALJ explicitly adopted Dr. Winer's opinion, which he summarized in part as follows:

> [Dr. Winer's] diagnosis of this industrial injury is aggravation of the [claimant's] pre-existing facet arthrosis and his S/I joint arthrosis and his L2-L5 fusion with radiculopathy. . . . He was of the opinion the [claimant] was not stationary and needed further treatment in the form of a repeat MRI, a course of physical therapy, possible repeat S/I joint injections, possible S/I joint fusion and possible extension of the [claimant's] fusion to include L5-S1.

In adopting Dr. Winer's opinion, the ALJ entered an award in favor of the claimant, authorizing the further medical investigation and management recommended by Dr. Winer.[6] Neither Sun Devil nor Amerisure challenged the award, and it became final. The claimant's sacroiliac condition did somewhat improve under Dr. Winer's further care, but his symptoms and abnormal physical findings at L5- S1 persisted, and Dr. Winer proposed a trial of epidural injections at the L5-S1 level. In response, the carrier arranged an orthopedic spinal evaluation by Dr. Dohring and, on the basis of his report, closed the claimant's case for active medical treatment. The claimant again protested the closure of the medical aspect of the case, and the case was assigned to ALJ Radke, who convened hearings to obtain the testimony of the claimant, Dr. Winer, and Dr. Dohring.

---

[6] The award included medical, surgical, and hospital benefits "until such time as [the claimant's] condition becomes medically stationary."

**The 2015 Hearings and Award**

¶17        In the subsequent hearings held in March and June 2015, Dr. Winer testified he had last seen the claimant on March 4, 2015.  At that time, the claimant still had low back pain radiating down the outside of his right leg.  The doctor described the presence of abnormal facet joint pathology on both sides of the claimant's spine, and diagnosed "symptomatic right L-5 radiculopathy with some numbness and weakness in the appropriate L-5 innervated muscles."  Dr. Winer testified the claimant's SI joint pain had improved,[7] and opined that the industrial injury had aggravated the claimant's bilateral L5-S1 foraminal stenosis, causing the persistent symptoms of right L5 radiculopathy.  Dr. Winer's opinion was supported by a March 11, 2014 MRI that showed "marked stenosis . . . on the right L5-S1 foramen," and a CT scan demonstrating "severe bilateral facet arthrosis . . . and degenerative dis[c]" at L5-S1.  Dr. Winer testified that the claimant's pre-existing, asymptomatic arachnoiditis was not the cause of his ongoing symptoms.  Finally, Dr. Winer opined that the claimant was not medically stationary and required ongoing active medical treatment.

¶18        In contrast, Dr. Dohring offered a medical opinion as to causation that was essentially identical to that previously offered by Dr. Beghin, and which had been explicitly rejected by ALJ Retzer.  Dr. Dohring testified the industrial injury exacerbated the claimant's pre-existing arachnoiditis within the *cauda equina* behind his 1999 L4 burst fracture, and his back and buttock pain were likely the result of a lumbar musculo-ligamentous, or soft tissue, strain.  According to the doctor's review of the imaging studies, the claimant had no instability or degeneration at L5-S1 that would require a fusion, and the foraminal stenosis at L5-S1 was only on the left side, and did not explain the claimant's subjective right-sided symptoms.  Dr. Dohring testified the claimant's diagnostic tests did not indicate he would benefit from an SI joint fusion; that there was no effective surgical treatment for arachnoiditis; that the claimant's medical condition was stationary; and that it was appropriate to close the case for active medical treatment, assign a percentage of permanent impairment, and move to the loss of earning capacity phase of the case.  Contrary to the earlier decision of ALJ Retzer, who accepted the opinion of Dr. Winer and rejected that of Dr. Beghin, ALJ Radke resolved the same medical conflict, this time in favor of Dr. Dohring's opinion and contrary to that of Dr. Winer.

---

[7]        In January 2015, Dr. Winer reported he had previously performed "an SI joint injection on the right, and this did provide significant short-term improvement."

**Application of Facts to Preclusion Law**

¶19      On appeal, the claimant argues ALJ Radke's award was erroneous as a matter of law because when ALJ Retzer adopted Dr. Winer's opinion in the December 2013 award—which became final without protest—the Industrial Commission necessarily determined the claimant's industrial injury had caused an "aggravation of the [claimant's] pre-existing facet arthrosis and his S/I joint arthrosis and his L2-L5 fusion with radiculopathy." In resolving the medical conflict in favor of Dr. Winer, ALJ Retzer rejected Dr. Beghin's competing opinion that the industrial injury caused only a strain/sprain, soft tissue injury to the claimant's low back, allowing his pre-existing asymptomatic arachnoiditis at L4 to become temporarily symptomatic. Because Dr. Dohring in 2015 was offering essentially the same causation opinion as Dr. Beghin in 2013, it should have been rejected on preclusion grounds.

¶20      The claimant relies on *Perry v. Industrial Commission*, 154 Ariz. 226, 741 P.2d 693 (App. 1987), to support his position. In *Perry*, a Phoenix Suns basketball player sustained a compensable industrial back injury. *Id.* at 227, 741 P.2d at 694. His claim was closed based on an IME that concluded he had sustained only a lumbar strain. *Id.* Perry protested, and at the ICA hearing, his doctor opined that Perry sustained an acute stress fracture of the *pars interarticularis* that had caused symptomatic spondylolisthesis.[8] *Perry*, 154 Ariz. at 227, 741 P.2d at 694. In contrast, the IME doctor testified that Perry only sustained a soft tissue sprain injury, and the ALJ adopted his opinion. *Id.* at 227-28, 741 P.2d at 694-95.

¶21      Six years after the award became final, Perry filed a petition to reopen, alleging his spondylolisthesis had caused degeneration of the disc space and required active treatment. *Id.* at 228, 741 P.2d at 695. The petition was denied for benefits, and following ICA hearings, the ALJ concluded that the nature of the claimant's industrial injury was determined to be soft tissue at the initial hearings and did not include spondylolisthesis. *Id.* On appeal, this court affirmed the ALJ's application of claim preclusion, recognizing that "the new evidence of additional degeneration is inconclusive; it merely generates the same conflict concerning etiology." *Id.* at 231, 741 P.2d at 698.

---

[8]      "*Spondylolisthesis*" is sometimes inaccurately referred to as a "slipped disc," but is actually the forward displacement of a vertebra, which is a bony abnormality, not a soft tissue injury. *See* Dorland's at 1458.

**¶22**      Respondents do not address the applicability of *Perry*; instead, they rely on *Aguayo v. Industrial Commission*. In *Aguayo*, the claimant sustained an industrial back injury in 1990 and underwent two surgeries for an L4-L5 disc herniation. 235 Ariz. at 414, ¶ 3, 333 P.3d at 32. He eventually became stationary with a permanent impairment and work restrictions, but returned to regular work. *Id.* The claimant performed his regular work until he sustained a new industrial back injury in May 2010. *Id.* at ¶ 4. His claim was accepted for benefits and then closed following an IME. *Id.* The claimant protested, and following ICA hearings in 2011, an ALJ found the 2010 injury was not stationary and awarded continuing medical benefits. *Id.* at 414-15, ¶¶ 4-5, 333 P.3d at 32-33.

**¶23**      The claimant in *Aguayo* continued to receive conservative treatment until December 2011, when he declined additional treatment. *Id.* at 415, ¶ 6, 333 P.3d at 33. After a repeat IME, his claim was closed as medically stationary with no additional impairment. *Id.* at ¶¶ 7-8. The claimant protested, but after hearings in 2012 that resulted in a 2013 award, the ALJ adopted the IME doctor's opinion that the claimant sustained a temporary exacerbation of his pre-existing back condition that resolved without additional impairment. *Id.* at ¶¶ 8-9. On appeal, the claimant argued that the 2011 award precluded the ALJ from adopting the IME doctor's opinion in the 2013 award. *Id.* at 418, ¶ 19, 333 P.3d at 36. We disagreed and found that the issue resolved in the 2011 award was whether the claimant's 2010 back injury was medically stationary. *Id.* at 417-18, ¶¶ 18-20, 333 P.3d at 35-36. Because the 2010 aggravation of the claimant's pre-existing back condition was not stationary, no decision as to any permanent impairment was made at that time. *Id.*

**¶24**      In this case, we find the facts and legal principles in *Perry* more applicable. In the first round of closure hearings in *Perry*, the ALJ had to decide what type of injuries the claimant had sustained as a result of the industrial injury. 154 Ariz. at 227-28, 741 P.2d at 694-95. The ALJ resolved the medical conflict in favor of the IME doctor's opinion that the industrial episode caused only a soft tissue injury. *Id.* When the claimant later attempted to reopen his claim for treatment of spondylolisthesis—previously found to be non-compensable in the prior hearings—he was found to be precluded from doing so by the prior award. *Id.* at 228, 741 P.2d at 695. In *Aguayo*, there was no dispute in the first round of closure hearings as to the type of injury the claimant sustained in the industrial incident, i.e., an aggravation of a pre-existing L4-L5 back injury. 235 Ariz. at 414, ¶¶ 3-4,

333 P.3d at 32. The only issue was whether that aggravation was stationary or required additional medical treatment. *Id.* at 415, ¶ 10, 333 P.3d at 33.

**¶25** In the instant case, the ALJ found in the 2013 award that the claimant sustained several different injuries caused by the industrial accident, including injury to the SI joint and aggravation of the pre-existing facet arthrosis and L2-L5 fusion with resulting radiculopathy, none of which were medically stationary at that time. In reaching this conclusion, ALJ Retzer rejected the competing opinion of Dr. Beghin that the claimant sustained only a soft tissue injury that had only temporarily exacerbated his pre-existing 1999 back injury—the very issue later reasserted by Dr. Dohring to ALJ Radke, who accepted that opinion in 2015.

**¶26** By the time of the 2015 hearings, however, the claimant's underlying pathology resulting in symptoms and physical findings had not changed. The causal connection between those conditions, symptoms, and findings and the industrial event had already been specifically and finally determined. As such, the only issue to be resolved in 2015 was whether those conditions—already determined to be caused or exacerbated by the industrial injury—were now medically stationary. Although purporting to address that issue, Dr. Dohring instead opined—and ALJ Radke found—that the underlying pathology and medical conditions were not causally related to the industrial injury.

**¶27** In our view of the record, Dr. Dohring's causation opinion was foreclosed by the final ICA award issued in 2013. ALJ Radke erred in not giving ALJ Retzer's findings the preclusive effect required.[9]

---

[9] By this decision, we do not intend to comment on or resolve the question of whether any surgery, if ultimately recommended by Dr. Winer or any other surgeon, is medically indicated.

## III. CONCLUSION

¶28     For the foregoing reasons, we set aside the 2015 award.



**Ruth A. Willingham · Clerk of the Court**
FILED: AA