NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

MANUEL ROMAN, *Petitioner Employee*,

*v.*

THE INDUSTRIAL COMMISSION OF ARIZONA, *Respondent*,

SHIPPERS WEST TRUCKLINE, *Respondent Employer*,

BERKSHIRE HATHAWAY HOMESTATE INS CO., *Respondent Carrier*.

No. 1 CA-IC 19-0046
FILED 9-29-2020

Special Action – Industrial Commission
ICA Claim No. 20133-160251
Carrier Claim No. 55020573
The Honorable Rachel C. Morgan, Administrative Law Judge

**AFFIRMED**

COUNSEL

Thomas C. Wilmer, PC, Phoenix
By Thomas C. Wilmer
*Counsel for Petitioner Employee*

Industrial Commission of Arizona, Phoenix
By Gaetano J. Testini
*Counsel for Respondent*

Cross & Lieberman, P.A., Phoenix
By Lawrence H. Lieberman
*Counsel for Respondent Employer and Respondent Carrier*

---

**MEMORANDUM DECISION**

Judge Maria Elena Cruz delivered the decision of the Court, in which Presiding Judge James B. Morse Jr. and Judge Paul J. McMurdie joined.

---

**C R U Z**, Judge:

¶1         This is a special action review of an Industrial Commission of Arizona ("ICA") award and decision upon review finding Manuel Roman's industrial injury was medically stationary without permanent impairment and terminating his temporary disability and medical benefits.  One issue is presented: whether issue preclusion prevents the award.  Because we conclude that issue preclusion does not bar the award, we affirm.

**FACTUAL AND PROCEDURAL HISTORY**

¶2         Roman worked for respondent employer Shippers West Truckline as a truck driver.  In 2013, Roman was on the job when he slipped and fell from his truck, hitting his head.  Shortly thereafter, he sustained a left subdural hematoma and underwent surgery.  Roman filed a workers' compensation claim, which was eventually accepted by the respondent carrier.  He began treatment for persistent headaches and dizziness.  In November 2014, Roman underwent an independent medical exam with Dr. Leo Kahn.  Dr. Kahn found no objective neurological findings related to the industrial injury and opined that Roman was medically stationary without permanent impairment.  The respondent carrier filed a notice of claim status closing Roman's claim, and he filed a request for a hearing.

¶3         In 2015, Roman underwent neuropsychological evaluations with Dr. Marc Walter and Dr. Alberto Texidor.  Dr. Walter diagnosed Roman with an undifferentiated somatoform disorder triggered by the industrial injury and an adjustment disorder with mixed anxiety and depressed mood, also secondary to the industrial injury.  He opined that although Roman's "cognitive functioning [was] seen to be severely compromised most likely due primarily to his maladaptive psychological reaction to his injury," he could not rule out a separate brain-related cognitive impairment.  A "big part" of the reason Dr. Walter could not rule

2

out a separate brain-related cognitive impairment was due to "cooperation issues" during testing. Dr. Walter concluded that Roman's condition was not stationary and that he needed psychiatric and psychological treatment related to the industrial injury.[1] Dr. Walter testified at the hearing that once Roman received the psychiatric and psychological treatment, he could be reevaluated to see if there was residual cognitive impairment from the brain injury. Dr. Walter did not render an opinion on the question of permanent impairment. In contrast, Dr. Texidor opined that Roman's condition was stationary without permanent impairment from a neuropsychological standpoint and that Roman did not need supportive care.

¶4 After the contested hearings in 2015 and 2016, the administrative law judge ("ALJ") resolved the conflict in the expert medical opinion in favor of Roman, finding the opinions and conclusions of Dr. Walter "regarding the need for [Roman]'s care and treatment," to be more probably correct. The ALJ awarded Roman medical, surgical, and hospital benefits and temporary total or temporary partial disability compensation benefits "until such time as [Roman]'s condition is determined to be medically stationary." The ALJ found that Roman had established by a preponderance of the evidence that he needed further active medical care, and accordingly did not decide whether he had a permanent impairment as a result of the industrial injury.

¶5 Dr. Rosalia Pereyra, a psychologist, began treating Roman in June 2016. Dr. Pereyra evaluated Roman and concurred with Dr. Walter's diagnosis. Dr. Pereyra saw Roman for psychotherapy approximately thirty times over more than two years. Roman was also treated by neurologist Dr. Michael Epstein, who prescribed him medication for anxiety.

¶6 In October 2017, independent medical examiner Dr. Joel Parker, a psychiatrist, examined Roman. Dr. Parker recommended that Roman undergo another neuropsychological evaluation because "the passage of time" might make it possible to distinguish between "severe

---

[1] Dr. Walter's 2015 report stated that Roman's providers "should be experienced in working with individuals who somatize and tend to convert psychological problems and stressors and, for that matter, beliefs, into physical symptoms." Dr. Walter stated that Roman needed at least twenty-five psychotherapy sessions and up to six psychiatric medication appointments over the course of a year, which "should be sufficient for active treatment." Dr. Walter further stated that Roman might require additional supportive treatment following active treatment.

cognitive disorder or malingered cognitive impairment." Roman did so with Dr. James Youngjohn in August 2018. Dr. Youngjohn diagnosed Roman with definite malingered neurocognitive disorder, which is coded in the DSM-5 as malingering. He opined that Roman was stationary from a psychological and neurophysiological perspective and noted that testing indicated that Roman deliberately chose wrong answers, "presumably in an effort to feign and exaggerate neurocognitive impairment." Dr. Youngjohn further opined that Roman would not benefit from additional psychotherapy and that he had no ratable permanent neuropsychological or psychological impairment attributable to the industrial injury.

¶7        After Dr. Youngjohn's evaluation, Dr. Parker opined that Roman did not have a neurocognitive disorder but instead had "malingered neurocognitive deficits . . . unrelated to the industrial injury," and that he was medically stationary with no ratable impairment. He further concluded that Roman did not require supportive psychological or psychiatric care, noting that he had "received several years of psychotherapy with the end result being evidence of frank malingering on neuropsychological evaluation."

¶8        In September 2018, the respondent carrier filed a notice of claim status terminating Roman's benefits, and Roman filed a request for a hearing. Dr. Walter reevaluated Roman in January 2019. Dr. Walter diagnosed Roman with somatic symptoms disorder[2] and chronic adjustment disorder with mixed anxiety and depressed mood. Noting that Roman's "cognitive functioning remains significantly compromised most likely due primarily to his maladaptive psychological reaction to his injury," Dr. Walter stated that he still could not rule out a separate brain-related cognitive impairment. Dr. Walter opined that Roman's condition was now medically stationary, that he had a twenty percent permanent impairment rating due to mental and behavioral disorders, and that he

_____

[2]        Dr. Walter testified that his 2019 diagnosis of Roman was "essentially the same diagnosis as 2015," except that under the new edition of the DSM the 2015 diagnosis of undifferentiated somatoform disorder was now called somatic symptoms disorder. Further, Roman's profile on the personality assessment inventory was now invalid because of the "inconsistency elevation" on the test. Dr. Walter also testified that he could not render an opinion with certainty as to his rule out diagnosis of mild neurological cognitive disorder because Roman's "psychological symptoms [were] high enough to cloud [his] ability to diagnose actual brain injury."

needed psychological and psychiatric supportive care on a permanent basis.[3]

¶9        An ALJ held contested hearings in 2019.  At the outset of the hearings, the parties agreed that the issues for the ALJ to decide included whether Roman was medically stationary, whether he should receive continuing benefits, and whether he had a permanent impairment as a result of the industrial injury.

¶10        After the hearings, the ALJ found that Roman's testimony was not credible.  In addition, she resolved the conflict in the medical evidence by adopting the opinions of Dr. Parker and Dr. Youngjohn as being more probably correct and well-founded.  The ALJ noted that no doctor was advocating that Roman continue to receive active care and found that he did not "require any further supportive care on an industrial basis for either a neuropsychological or psychological condition."  The ALJ further found that Roman's industrial injury was medically stationary without permanent impairment.  She rejected Roman's argument that issue preclusion applied, noting that in 2016, the issue was whether Roman had a compensable neuropsychological injury, but that the issue in this proceeding was whether he required "further supportive care for his neuropsychological condition found to be a compensable consequence of his industrial injury."

¶11        Roman filed a request for review, and the ALJ summarily affirmed the award.  This special action followed.  We have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") sections 12-120.21(A)(2), 23-951(A), and Arizona Rule of Procedure for Special Actions 10.

## DISCUSSION

¶12        Roman raises one issue on appeal: whether ICA was precluded from reconsidering the nature of his condition after finding him to be not stationary in 2016.  Roman argues that issue preclusion should have prevented the ALJ from adopting the opinions of Drs. Youngjohn and Parker and determining he was medically stationary without the need for supportive care.  "[T]he applicability of preclusion is a mixed question of fact and law." *Bayless v. Indus. Comm'n*, 179 Ariz. 434, 439 (App. 1993).  We apply a deferential standard of review to the resolution of disputed facts

---

[3]        Roman's treating psychologist, Dr. Pereyra, testified at the hearing that she agreed with Dr. Walter's conclusions that Roman was medically stationary, had a permanent impairment, and needed further treatment.

and a de novo standard of review to the ultimate conclusion of whether the facts trigger preclusion. *Id.*

¶13 Issue preclusion applies only if an issue was litigated, determined, and the determination was necessary to the decision. *Id.* The party asserting preclusion has the burden of proving that the issue was litigated, determined, and determination of the issue was necessary. *Id.* In the workers' compensation setting, "*res judicata* serves to conclude only those questions existing and known at the time of the award." *Stainless Specialty Mfg. Co. v. Indus. Comm'n*, 144 Ariz. 12, 16 (1985) (internal quotation omitted).

¶14 Workers' compensation claims are administered through a progression of separate claim stages. At each stage, a notice of claim status is issued and becomes final unless the claimant files a timely hearing request. A.R.S. § 23-947(A). A timely hearing request opens all issues addressed by the notice of claim status for consideration by the ALJ. *See, e.g.*, *Parkway Mfg. v. Indus. Comm'n*, 128 Ariz. 448, 451 (App. 1981). A claimant becomes medically stationary when the claimant's industrial injury is not subject to further improvement. *Home Ins. Co. v. Indus. Comm'n*, 23 Ariz. App. 90, 94 (1975). When a physician discharges a claimant from active medical treatment, the physician is required to determine if the claimant has sustained a permanent impairment as a result of the industrial injury. Ariz. Admin. Code R-20-5-113(B).

¶15 To determine whether preclusion applies, we examine the issues raised and the evidence presented at the 2015/2016 and 2019 hearings. *See Miller v. Indus. Comm'n*, 240 Ariz. 257, 259, ¶ 10 (App. 2016). In 2014, the respondent carrier closed Roman's claim with no permanent impairment. Roman protested and asserted he needed continuing active medical care. At the 2015/2016 hearings, the ALJ was asked to decide if Roman was medically stationary or whether he needed further active psychological and psychiatric medical care. After adopting Dr. Walter's opinion that Roman was not medically stationary, the ALJ entered an award in favor of Roman, authorizing the further psychological and psychiatric treatment recommended by Dr. Walter, "until such time as [Roman]'s condition is determined to be medically stationary." Because the ALJ concluded that Roman was not yet medically stationary, he did not decide the issue of permanent impairment. *See* A.R.S. § 23-1047 (the right to a permanent disability award does not arise until a claimant's condition becomes stationary).

¶16　　　　Roman underwent new evaluations in 2018 and 2019, after having been treated for more than two years. Dr. Walter had anticipated reevaluation after treatment in 2015, and in the subsequent hearings in 2019, Dr. Walter testified that Roman was now medically stationary and required supportive care. In 2019, it was undisputed that Roman was medically stationary, and the ALJ was asked to decide if Roman had a permanent impairment and whether he needed supportive (as opposed to active) medical care. Because Roman's condition was not stationary at the time of the 2015/2016 litigation, the ALJ was not bound by the previous decision adopting Dr. Walter's 2015 opinion that Roman required further active medical care and was not malingering.

## CONCLUSION

¶17　　　　For the foregoing reasons, we affirm the award and decision upon review.



AMY M. WOOD • Clerk of the Court
FILED:　AA